IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUSTICE FOR MIGRANT FAMILIES, PRISONERS' LEGAL SERVICES OF NEW YORK, and ROBERT F. KENNEDY HUMAN RIGHTS,<br><br>  *Plaintiffs*,<br><br>  v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>  *Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### I.  INTRODUCTION

1. Plaintiffs—nonprofits who serve and advocate on behalf of immigrants—bring this Freedom of Information Act ("FOIA") suit to obtain records related to the treatment of immigrants detained by Immigration and Customs Enforcement ("ICE") at the Buffalo Service Processing Center ("Batavia"), New York State's largest immigrant detention facility. Plaintiffs' FOIA request was submitted in March 2022, yet ICE has refused even to process it, much less produce the requested records. Plaintiffs therefore seek judicial intervention to obtain this information vital to their missions and to the wellbeing of the hundreds of immigrants detained at Batavia each year.

2. Plaintiffs Justice for Migrant Families ("JFMF"), Prisoners' Legal Services of New York ("PLS"), and Robert F. Kennedy Human Rights ("RFKHR"), together, the "Plaintiffs," work closely with people detained in Batavia and regularly receive reports

concerning conditions, treatment, and due process violations at the facility. For example, Elias[1] described being placed in solitary confinement for 13 days without a hearing after he accidentally injured another person during a soccer game. "After I got out, I was given a different color uniform and moved to a higher security unit. I worried how this could hurt my case, even though I did nothing wrong." Detained individuals also report the use of solitary confinement as a form of retaliation, like Apollo, who recounted being placed in solitary confinement after he refused to sign a form to 'self-deport.'

3. Indeed, in recent years Batavia has generated public interest and concern for the egregious conditions of confinement, including, but not limited to, medical neglect,[2] failure to provide COVID-19 vaccines and personal protective equipment ("PPE") such as masks,[3] and retaliation for protesting unsafe conditions.[4]

---

[1] Plaintiffs use pseudonyms in this paragraph in order to protect the privacy of these individuals and due to their fear of retaliation by ICE for speaking out about their experiences at Batavia.

[2] *See, e.g.,* Rita Omokha, *'They don't have any humanity': Black immigrants in Ice custody report abuse and neglect*, The Guardian (July 22, 2022, 08:00 EDT), https://www.theguardian.com/us-news/2022/jul/22/ice-black-immigrants-abuse-medical-neglect.

[3] *See, e.g.,* Massarah Mikati, *63% of local ICE detainees contracted COVID-19. Now some are getting first vaccine shot.*, Times Union (updated Mar. 24, 2021, 4:33 PM), https://www.timesunion.com/news/article/63-of-local-ICEdetainees-contracted-COVID-19-16049808.php; Noelle E.C. Evans, *30 detainees test positive for coronavirus at ICE detention center in Batavia*, WBFO – NPR (Feb. 23, 2021, 6:06 AM EST), https://www.wbfo.org/crime/2021-02-23/30-detainees-test-positive-for-coronavirus-at-ice-detention-center-in-batavia; Jim Heaney, *Lawyers protest dangers at detention center*, Investigative Post (Mar. 25, 2020), https://www.investigativepost.org/2020/03/25/lawyers-protest-dangers-at-detention-center/.

[4] *See, e.g.,* Phoebe Taylor-Vuolo, *A Man Detained in Batavia is Fighting to Be Deported. ICE Has Cancelled His Flight 13 Times.*, Documented (Apr. 27, 2021), https://documentedny.com/2021/04/27/a-man-detained-in-batavia-is-fighting-to-be-deported-ice-has-cancelled-his-flight-13-times/.

4. Batavia has also been implicated in unsafe release practices that have resulted in serious injury and even death.[5] For example Pierre, a man with schizophrenia and multiple physical health conditions, was found dead in the street shortly after his release from Batavia at a rural gas station. Despite months of advocacy and repeated requests by Plaintiff JFMF, ICE declined to provide a release date to the advocates coordinating his housing and medical care and refused to make reasonable accommodations to facilitate Pierre's safe release.

5. Plaintiffs seek records regarding ICE detention practices to ensure that they and the communities they serve can evaluate immigration enforcement actions in their communities, including their potential detrimental effects. Without this information, Plaintiffs and other stakeholders involved in defending the rights of people detained at Batavia are hampered in their efforts to hold ICE accountable for the treatment of people detained at Batavia.

6. Not only will this information assist detained people, their loved ones, and advocates defending the rights of detained people in upstate New York, it is also vital to providing the public with the information necessary to engage in the democratic process and public debate surrounding ICE detention in New York State and beyond. The records sought will inform statewide and national conversations on the use of immigration detention, particularly as New York considers the Dignity Not Detention Act (S.B. 7373/Assemb. B. 7099A) and New York for All Act (S.B. 03076/Assemb. B. 02328), which would prohibit state, municipal, and

---

[5] *See* FOIA Request, attached hereto as Exhibit A and incorporated by reference herein, at 2-3; Giulia McDonnell Nieto Del Rio, *ICE is Leaving Asylum Seekers at a Remote Bus Station in New York*, Documented (Feb. 25, 2022), https://documentedny.com/2022/02/25/ice-detainees-locator-new-york/; Alex Love, *Local immigration organizations accuse ICE in Batavia of mishandling*, Rochester First (Dec. 6, 2021, 5:55 PM EST), https://www.rochesterfirst.com/news/local-immigration-charities-accuse-i-c-e-in-batavia-of-mishandling/; Phil Gambini, *ICE's ill treatment of released [detained people]*, Investigative Post (updated Apr. 28, 2020, 8:10 PM), https://www.investigativepost.org/2020/04/28/ices-ill-treatment-of-released-detainees/.

private facilities from entering into detention contracts with ICE, and prevent state and local officials from enforcing federal immigration laws, respectively.

7. Despite the strong public interest in records regarding ICE's detention practices in upstate New York and whether they comply with constitutional, statutory, and regulatory requirements regarding detention, ICE has failed to produce a single document in the more than eight months since Plaintiffs submitted their request. Plaintiffs bring this lawsuit to compel Defendants to comply with the FOIA, 5 U.S.C. § 552 *et seq.* and to promptly release the improperly withheld agency records vital to vindicating the rights of detained people and to the public conversation on the future of immigration detention in New York.

## II. JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C. § 2201, and 5 U.S.C. § 702 *et seq.*

9. Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) because Plaintiff JFMF maintains its principal place of business in this judicial district and, on information and belief, at least some of the records at issue are located in this judicial district.

## III. PARTIES

10. Plaintiff JFMF is a community-based 501(c)(3) non-profit organization with its principal place of business in Buffalo, New York. JFMF connects detained people with legal resources and social services, provides material support to detained and recently released people, and conducts a visitation and pen pal program with people detained at Batavia. JFMF also collects and disseminates resources for people detained at Batavia and their families, which are housed on JFMF's website. JFMF will use the information obtained through the FOIA request to serve community members most directly affected by the information and to ensure accountability for the Government's routine violations of detained peoples' rights at Batavia. JFMF will also

work with other non-profit and advocacy organizations to ensure that the information obtained through these requests is distributed to directly impacted populations and other stakeholders, and to the public at large.

11. Plaintiff PLS is a 501(c)(3) nonprofit that provides legal representation and assistance to indigent prisoners, helping them to secure their civil and human rights and advocate for more humane prisons and for a more humane criminal justice system. PLS represents individuals detained at Batavia in their immigration proceedings and in challenges to the length and conditions of their detention in federal court. PLS also advocates on conditions, issues, and policies affecting people detained at Batavia through litigation and other means. PLS will work with other nonprofit and advocacy organizations to ensure that the information obtained through these requests is distributed to directly impacted populations and other stakeholders, along with the public at large.

12. Plaintiff RFKHR is a 501(c)(3) not-for-profit organization that, among other things, advocates for human rights issues and pursues strategic litigation to hold governments accountable for human rights abuses, including by pursuing immigrants' rights and anti-detention advocacy and litigation opportunities. RFKHR carries on the work and interests of Rapid Defense Network ("RDN") following the integration of RDN's operations with RFKHR in September 2022. RDN was a 501(c)(3) nonprofit that represented a number of people detained at Batavia. RDN worked with local partners to develop resources for people detained at Batavia and increase access to legal services at the facility. RDN monitored developments in immigration law that affect the rights of non-U.S. citizens and partnered with law firms and law school clinics to bring impact litigation and federal court claims on behalf of noncitizens to address systemic issues. During the COVID-19 pandemic, RDN made information available to the public

regarding litigation efforts to address the conditions of confinement for people in immigration detention through its website and related media platforms that are accessible to the public. RDN will be moving to dissolve as an independent 501(c)(3) following the integration of its operations with RFKHR. RFKHR carries RDN's interests in this matter going forward and will work with other non-profit advocacy organizations to ensure that the information obtained through these requests is distributed to directly impacted populations and other stakeholders, and to the public at large.

13. Defendant ICE is an office of the Department of Homeland Security (DHS), is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is headquartered in Washington, DC. ICE has possession, custody, and control of the records Plaintiffs seek in this action.

## IV.  LEGAL FRAMEWORK OF FOIA

14. FOIA requires federal agencies to make non-exempt records "promptly available to any person" who makes a proper request. 5 U.S.C. § 552(a)(3)(A).

15. Federal agencies must provide non-exempt public records when they are requested by the public in order "to ensure an informed citizenry, vital to the functioning of a democratic society." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

16. An agency must determine "whether to comply with [a FOIA] request" "within 20 days (excepting Saturdays, Sundays, and legal public holidays)," and must "immediately notify the person making such request of," *inter alia*, "such determination and the reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i); *see also* 6 C.F.R. § 5.6(c).

17. Under the governing regulation, ICE is required to deny or grant a request, in full or in part, and to notify the requester in writing. 6 C.F.R. § 5.6(c) ("a component shall have twenty (20) working days from when a request is received to determine whether to grant or deny

the request unless there are unusual or exceptional circumstances"). A denial, in whole or in part, must indicate the specific reason for the denial, such as: the requested record is exempt, in whole or in part; the request does not reasonably describe the records sought; the information requested is not a record subject to the FOIA; the requested record does not exist, cannot be located, or has been destroyed; or the requested record is not readily reproducible in the form or format sought by the requester. 6 C.F.R. § 5.6(d).

18. Although an agency need not always make its productions by the statutory deadline, its timely response must include "the agency's determination of whether or not to comply with the request; the reasons for its decision, and notice of the right of the requester to appeal to the head of the agency if the initial agency decision is adverse." *Sloman v. U.S. Dep't of Just.*, 832 F. Supp. 63, 66 (S.D.N.Y. 1993).

19. An agency is required to respond to any FOIA appeals within 20 business days of the receipt of the appeal by granting access to the records or fully explaining the reasons for further denial in writing. 5 U.S.C. § 552(a)(6)(A)(ii); 6 C.F.R. § 5.8(d).

20. If a determination on the appeal is not rendered within 20 business days, the failure to do so constitutes an exhaustion of administrative remedies. § 552(a)(6)(C)(i). The requester "shall be deemed to have exhausted [their] administrative remedies with respect to such request if the agency fails to comply with the applicable time limit [provided by 5 U.S.C. § 552(a)(6)(A)-(B)]." *Id*.

21. FOIA provides that any person who has not been provided the records requested pursuant to FOIA, after actually or constructively exhausting their administrative remedies, may seek legal redress from the federal district court to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the

complainant. *See* § 552(a)(4)(B); *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 64 (D.C. Cir. 1990) ("[C]onstructive exhaustion under 5 U.S.C. § 552(a)(6)(C) allows immediate recourse to the courts to compel the agency's response to a FOIA request.").

22. FOIA also provides that this Court may assess attorneys' fees and litigation costs against the United States if Plaintiffs prevail in this action. *See* § 552(a)(4)(E).

## V. FACTUAL ALLEGATIONS

### 1. The FOIA Request

23. On March 30, 2022, Plaintiffs submitted a FOIA request via electronic mail to ICE that requested, among other things, records regarding the scope and scale of detention in the Buffalo Field Office District ("BFOD") and records regarding the treatment of people detained at Batavia, including accommodations for disabled people; language access and access to justice; safe release practices; adequacy of medical care; solitary confinement practices; officer misconduct and abuse; and conditions of confinement. *See* Exh. A.

### 2. ICE's Failure to Respond to the FOIA Requests

24. ICE's response was due by April 27, 2022, 20 business days after receiving the FOIA request. 5 U.S.C. § 552(a)(6)(A); 6 C.F.R. § 5.6(C). ICE did not respond.

25. Plaintiffs submitted follow-up emails to ICE on April 29, 2022, and May 12, 2022, alerting ICE that the statutory period to reply had lapsed, informing them that no response to the FOIA request had been provided, and requesting that ICE provide one. ICE failed to respond to either email.

26. On June 2, 2022—over one month after a response was due in compliance with 5 U.S.C. § 552(a)(6)(A) and 6 C.F.R. § 5.6(C)—ICE acknowledged receipt of the FOIA request but did not provide any of the information legally required of an agency's response. In addition, ICE constructively denied Plaintiffs' request for a fee waiver with no explanation, in violation of

5 U.S.C. § 552(a)(4)(A)(iii). *See* Agency FOIA Receipt, attached hereto as Exhibit B and incorporated by reference herein.

### 3. ICE's Failure to Provide Records

27. On June 16, 2022, Plaintiffs submitted an Administrative Appeal to ICE, requesting that ICE grant the FOIA Request and provide a fee waiver. *See* Administrative Appeal, attached hereto as Exhibit C and incorporated by reference herein. ICE's response to the Administrative Appeal was due July 19, 2022, 20 business days after receiving the Administrative Appeal. 5 U.S.C. § 552(a)(6)(A)(ii); 6 C.F.R. § 5.8(d).

28. On June 21, 2022, ICE acknowledged receipt of the Administrative Appeal but did not provide a substantive response. *See* Administrative Appeal Receipt, attached hereto as Exhibit D and incorporated by reference herein.

29. On July 13, 2022, ICE remanded the search to ICE FOIA Office but again failed to provide a substantive response. *See* ICE Remand July 13, 2022, attached hereto as Exhibit E and incorporated by reference herein.

30. On August 11, 2022, ICE sent a *pro forma* response asserting that Plaintiff's FOIA Request "is too broad in scope, did not specifically identify the records which you are seeking, or only posed questions to the agency." *See* ICE Response August 11, 2022, at 1, attached hereto as Exhibit F and incorporated by reference herein. ICE requested Plaintiffs re-submit the request with a "reasonable description" of the records sought. *Id.* ICE failed to indicate what details the FOIA Request lacked.

31. On September 9, 2022, Plaintiffs responded to ICE's *pro forma* response, disagreeing with ICE's assertion that the request failed to reasonably describe the records sought and asking ICE to either process the request as submitted, or in the alternative to "provide further guidance on what portions of the request fail to 'reasonably describe' the records sought and what additional information is needed to process the request[,]" as ICE is required to do under 6 C.F.R. § 5.3(b). *See* Plaintiff's Reply September 9, 2022 at 3, attached hereto as Exhibit G and incorporated by reference herein.

32. ICE has not "inform[ed] the requester what addition information is needed" as is required by 6 C.F.R. § 5.3(b). ICE has not replied at all. On October 7, 2022, Plaintiffs checked the DHS FOIA Public Access Portal and saw that their request had been closed. ICE provided no information regarding this closure, and Plaintiffs were not notified that their request had been closed.

**4. Exhaustion of Administrative Remedies**

33. Given that ICE has failed to provide the required determinations in response to Plaintiff's FOIA Requests by the statutory deadlines, Plaintiffs have constructively exhausted the administrative remedies and may pursue judicial review. *See* § 552(a)(6)(C)(i); *Oglesby*, 920 F.2d at 64 ("[C]onstructive exhaustion under 5 U.S.C. § 552(a)(6)(C) allows immediate recourse to the courts to compel the agency's response to a FOIA request.").

## VI.  CAUSES OF ACTION

### Count 1

**Violation of FOIA, 5 U.S.C. § 552(a)(3)(A), for Failure to make Promptly Available the Records Sought by Plaintiffs' Request**

34. Plaintiffs repeat the allegations in the foregoing paragraphs and incorporate them as though fully set forth herein.

35. Plaintiffs properly requested records within the possession, custody, and control of Defendant.

36. Defendant's failure to make promptly available the records sought by Plaintiffs' Request violates FOIA, 5 U.S.C. § 552(a)(3)(A).

### Count 2

**Violation of FOIA, 5 U.S.C. § 552(a)(6)(A)(i), for Failure to Timely Respond to Plaintiffs' Request with the Required "Determinations"**

37. Plaintiffs repeat the allegations in the foregoing paragraphs and incorporate them as though fully set forth herein.

38. Plaintiffs properly requested records within the possession, custody, and control of Defendant.

39. Defendant's failure to timely respond to Plaintiffs' Request with the required determinations violates the FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and DHS regulation promulgated thereunder, *see* 6 C.F.R. § 5.6(c); 6 C.F.R. § 5.3(b).

### Count 3

**Violation of FOIA, 5 U.S.C. § 552, for Wrongful Denial of Statutory Fee Waiver**

40. Plaintiffs repeat the allegations in the foregoing paragraphs and incorporate them as though fully set forth herein.

41. FOIA requires Defendants to provide records at no charge or at reduced charge "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

42. Plaintiffs request records related to issues of significant public interest, including Defendants' treatment of Plaintiffs' clients and community members and ICE's compliance with constitutional law and human rights.

43. Plaintiffs are requesters with no commercial interest in the records sought and will make responsive records available to the public at no charge.

44. In addition, an agency "shall not assess any search fees" if it fails to comply with the time limits in subparagraph 6 of FOIA, including the time limit to "determine within 20 days . . . after the receipt of any such request whether to comply with such request." 5 U.S.C. § 552(a)(4)(A)(viii); § 552(a)(6)(A)(i).

45. Plaintiffs are thus eligible for a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii) and entitled to a fee waiver under 5 U.S.C. § 552(a)(4)(A)(viii).

## VII.  PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court enter Judgment for Plaintiffs and provide the following relief:

(a) Declare that Defendant has violated FOIA by failing to provide Plaintiffs with all non-exempt records responsive to Plaintiffs' FOIA request;

(b) Declare that Defendant has violated FOIA by failing to timely respond to Plaintiffs' FOIA request with the required determinations or additional information the FOIA request needs;

(c)  Direct by injunction that Defendant perform adequate searches for records responsive to Plaintiffs' FOIA request and provide Plaintiffs with all non-exempt responsive records to Plaintiffs' FOIA request no later than 20 days after this Court issues an order granting Plaintiffs relief;

(d) Enjoin Defendant to grant a full waiver of all fees associated with Plaintiffs' request;

(e) Enjoin Defendant from charging Plaintiffs search, review, or duplication fees of the processing of the request;

(f) Review *de novo* any assertions by Defendant that the requested records (or any portion thereof) are exempt from disclosure;

(g) Grant Plaintiffs the costs of litigation, including reasonable attorney fees, as provided by FOIA, 5 U.S.C. § 552(a)(4)(E), 28 U.S.C. § 2412, and any other applicable authority; and

(h)  Grant any other relief that the Court deems just and proper.

Dated: December 1, 2022                              Respectfully submitted,

/s/ Sarah T. Gillman

SARAH T. GILLMAN (Bar No. 3986197)
ANTHONY ENRIQUEZ (*pro hac vice forthcoming*)
SARAH DECKER (*pro hac vice forthcoming*)
gillman@rfkhumanrights.org
enriquez@rfkhumanrights.org
decker@rfkhumanrights.org
ROBERT F. KENNEDY HUMAN RIGHTS
88 Pine Street, 8th Floor, Suite 801
New York, NY 10005
Telephone: (929) 969-8258

JOHN H. PENG (Bar No. 5751680)
jpeng@plsny.org
PRISONERS' LEGAL SERVICES OF NEW YORK
41 State Street, Suite M112
Albany, New York 12207
Telephone: (518) 859-0060

RENE KATHAWALA (*pro hac vice forthcoming*)
rkathawala@orrick.com
BENJAMIN BOLNICK (*pro hac vice forthcoming*)
bbolnick@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

LAUREN MICHEL WILFONG* (Bar No. 5975529)
JANE P. BENTROTT (*pro hac vice forthcoming*)
Lauren.wilfong@justiceactioncenter.org
Jane.bentrott@justiceactioncenter.org
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: 323-536-3850

*\* Not admitted to practice in California*

*Counsel for Plaintiffs*

*\* Not admitted to practice in California*