IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUSTICE FOR MIGRANT FAMILIES, PRISONERS' LEGAL SERVICES OF NEW YORK, and ROBERT F. KENNEDY HUMAN RIGHTS,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>Defendant. | Civil Action No. 1:22-CV-929-LJV-HKS |

## ICE'S RESPONSE TO PLAINTIFFS' MEMORANDUM OF LAW REGARDING PRODUCTION

Defendant, U.S. Immigration and Customs Enforcement ("ICE" or "Defendant"), respectfully submits this response to the Memorandum of Law Regarding Production (ECF No. 18) by Plaintiffs Justice for Migrant Families ("JFMF"), Prisoners' Legal Services of New York ("PLS"), and Robert F. Kennedy Human Rights ("RFKHR") (collectively, "Plaintiffs").

### INTRODUCTION

Plaintiffs seek an order from the Court: (1) setting a 30-day deadline for ICE to submit a motion for summary judgment concerning its searches for records, and (2) requiring ICE to *produce* 2,000 pages of responsive records to Plaintiffs per month.[1] Both of these demands are

---

[1] In the next several days ICE will send Plaintiffs an initial production of 502 pages of records. Defendant notes that although there is not any production schedule currently in place, ICE makes this production and continues its searches in good faith in an effort to avoid further delay in meeting its production obligations.

unreasonable, unrealistic, and inconsistent with the law in FOIA litigation, and the Court should deny Plaintiffs' requests outright.

By definition, the defendant in a FOIA lawsuit cannot seek summary judgment until there is no longer an issue of material fact and the moving party is entitled to judgment as a matter of law. Because ICE's searches in this case are ongoing, and the production of records is only about to begin, ICE cannot possibly seek summary judgment on searches and productions that are not complete, and certainly not within 30 days of the issuance of the Court's Case Management Order.

Plaintiffs also seek an order from the Court requiring ICE to *produce*, not *process* 2,000 pages of records per month. As set forth in more detail below, this is an impossible standard for a federal agency to meet in a request as large as Plaintiffs' request in this case, and it is contrary to the law in the vast majority of FOIA cases. Furthermore, such a standard unrealistically presumes that 2,000 pages of *responsive* records will even be found in ICE's searches each month.

## BACKGROUND

This case concerns Plaintiff's Freedom of Information Act ("FOIA") request, which seeks documents from ICE related to the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. Plaintiffs submitted a FOIA request to ICE on March 30, 2022. ICE acknowledged receipt of Plaintiffs' FOIA request on June 2, 2022, but did not send any further response and did not produce documents. Plaintiffs then initiated the instant lawsuit on December 1, 2022, *see* Compl. (ECF No. 1), and ICE answered on January 18, 2023 (ECF No. 7).

On January 19, 2023, the Court ordered the parties to meet in compliance with Fed. R. Civ. P. ("Rule") 26(f) and to submit a joint proposed Case Management Order (ECF No. 10). On February 23, 2023, the parties submitted a joint Report of their Rule 26(f) Planning Meeting (ECF No. 15), which included a proposed Case Management Order and also proposed a briefing

schedule regarding some unresolved issues. The Court has not yet issued its Case Management Order. Nonetheless, Plaintiffs filed a Memorandum Brief on March 10, 2023 (ECF No. 18). ICE files this response in the interest of efficiency and to inform the Court of its position on the relevant issues in dispute.

## ARGUMENT

### I.

### PLAINTIFFS' DEMAND THAT ICE FILE A MOTION FOR SUMMARY JUDGMENT WITHIN 30 DAYS OF THE COURT'S ORDER IS INAPPROPRIATE AND CONTRARY TO THE LAW IN FOIA LITIGATION.

"FOIA cases are generally and most appropriately resolved on motions for summary judgment." *Families for Freedom v. U.S. Customs and Border Protection*, 797 F. Supp. 2d 375, 385 (S.D.N.Y. 2011). "Summary judgement in the FOIA context, as in any other, is appropriate if the record 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id*. "The court will grant summary judgment to the government in a FOIA case only if the agency can prove 'that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" *Gatore v. U.S. Dep't of Homeland Sec.*, 177 F. Supp. 3d 46, 50 (D.D.C. 2016). To prevail on a motion for summary judgment, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *Parker v. ICE*, 238 F. Supp. 3d 89, 97 (D.D.C. 2017) (internal citations omitted).

Plaintiffs' FOIA request includes 24 separate requests which encompass 132 sub-categories of requested records (ECF No. 1-3 at 19-26). The first numbered request is for "[a]ll executed agreements . . . after July 1, 2019, between ICE and third parties, including municipal,

state, or private actors, regarding the detention of, or provision of services to, immigrants in ICE custody within the Buffalo Field Office District." *Id.* at 19. ICE has repeatedly asked Plaintiffs to clarify or narrow the scope of this request, which will alone likely return a very large number of records. (Virtually all outside contracts with the facility pertain to the detention or provision of services to detainees. For example, does this include food contracts with the kitchen facilities? Paint for walls and ceilings? Light bulbs? Laundry products?) Plaintiffs only submitted their proposed narrowed requests for the first and second items two days ago, on March 22, 2023.

The second numbered request, which raises similar concerns, seeks "[a]ny communications since January 1, 2021, between ICE and third parties, including municipal, state, or private actors, regarding contract renewal, supplemental agreements, addendums, or riders related to the agreements referenced in request one." *Id.*

Here, the Court has not even issued a Case Management order, which would include a schedule for processing and producing records responsive to Plaintiffs' requests. ICE cannot move for summary judgment regarding the adequacy of searches or any records it determines are exempt while searches and productions are ongoing. In other words, ICE cannot seek summary judgment while there remain unresolved issues of fact.

In FOIA cases, the more appropriate vehicle for keeping production schedules moving and resolving issues that arise mid-litigation is a Joint Status Report, which are routinely filed by the parties on a 30- or 60-day basis. This way the Court can remain apprised of the progress of the case and can resolve any issues that arise in the interim. *See Am. Ctr. for Law & Justice v. U.S. Dep't of Justice*, 325 F. Supp. 3d 162, 168 (D.D.C. 2018) ("[J]oint status reports often play the same role in FOIA cases as pretrial conferences do in other civil litigation;" parties can narrow the

4

scope of requests, narrow the scope of issues in the case, and propose briefing to resolve disputed issues.).

In short, it would be impossible for ICE to seek summary judgment when it cannot yet meet its required burden to show that its searches have been adequately completed and exemptions have been sufficiently justified. *See Albaladejo v. ICE*, 518 F. Supp. 3d 496, 505 (D.D.C. 2021) (denying ICE's motion for summary judgment as "premature" where agency continued to assess its search for responsive documents). ICE requests that, as part of the production schedule set by the Court, the parties be required to submit Join Status Reports to the Court every 60 days from the issuance of the Court's Case Management Order.

## II.

### THE COURT'S ORDER SHOULD SET A SCHEDULE WHEREBY ICE SHALL *PROCESS* AT LEAST 500 PAGES OF RECORDS PER MONTH.

ICE proposes a schedule for the processing and production of records that are responsive to Plaintiffs' FOIA request: that it will conduct searches on a rolling basis; review and process 500 pages of records per month; produce any responsive records as a result on the first day of each month; and that monthly productions will continue until production is complete.

Plaintiffs' demands that ICE provide specific search terms in advance, as well as motions for partial summary judgment on the "adequacy of the search plan," are impractical. As set forth below, given the large number of FOIA matters being handled by a relatively small FOIA staff, these unusual steps would significantly slow down the process in this matter and prevent ICE from making progress on the many other requests and litigation matters it is currently addressing.

This processing and production rate is consistent with ICE's normal processing rate, as well as the number of pages *processed* – not produced – that courts have found to be a reasonable

monthly rate.[2] "Courts have issued orders providing for the *processing* of 500 pages per month, even where that schedule will result in lengthy production periods." *ACLU v. U.S. Dep't of Homeland Sec.*, 20 Civ. 10083 (PGG), 2021 WL 5449733, at *1-2 (S.D.N.Y. Nov. 19, 2021) (processing 1,000 pages of potentially responsive material per month "is not practicable;" 500-page processing rate "is reasonable") (emphasis added) (citing *White v. EOUSA*, 444 F. Supp.3d 930, 965 (S.D. Ill 2020) (approving 500 pages per month and nine-year production period); *Colbert v. FBI*, No. 16-cv-1790 (DLF), 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018) (approving 500 pages per month and a decade-long production period); *Negley v. U.S. Dep't of Justice*, 305 F. Supp.3d 36, 46 (D.D.C. 2018) (approving 500 pages per month and an 80-year production period)).

"It is not unusual for a court to defer to a federal agency about its records release policies." *White v. Dep't of Justice*, 460 F. Supp.3d 725, 759 (S.D. Ill. 2020). ICE's normal processing rate for cases in litigation is 500 pages per month. This yields monthly litigation review of approximately 32,500 pages and an average of 13,500 pages released every month. Based on this workload, each ICE FOIA Litigation Team member reviews approximately 5,416 pages per month.

ICE currently is working on 171 active FOIA cases in litigation, with 75 engaged in rolling productions of records. As of February 13, 2023, the ICE FOIA Office is currently processing approximately 21,366 open FOIA requests addressing a backlog of 17,628 requests. In fiscal year ("FY") 2020, the number of FOIA requests the ICE FOIA Office handled dramatically increased to over 100,000 from approximately 64,000 in FY 2019. Since FY 2020, that number has continued

---

[2] Processing and production schedules in FOIA litigation are almost always set by a number of pages *processed* per month. Once the pages are reviewed and processed, the agency then produces the pages that are found to be responsive to the FOIA request. If the Court were to order ICE to *produce* a certain number of pages per month, it could require ICE to review and process many hundreds or even thousands of pages until it came upon the requisite number of responsive pages.

to increase, with the ICE FOIA Office handling approximately 105,000 requests in FY 2021 and over 110,000 requests in FY 2022. The ICE FOIA Litigation Team consists of three ICE FOIA paralegals and three temporary detailees from other ICE Program Offices, who serve on 120-day details to the ICE FOIA Office.

In addition to the increasing volume of FOIA requests, ICE has also experienced an increase in the complexity of FOIA requests, both in terms of volume and substance. For example, it is common to see FOIA requests with 50-to-60 sub-parts comprising several pages, searches of numerous program offices, and a universe of records made up of thousands of pages that must be reviewed and processed one page at a time. These FOIA requests take considerably longer to process due to extensive searches and the intricacy of the documents and/or data produced.

In *Middle East Forum v. DHS*, 297 F. Supp. 3d 183 (D.D.C. 2018), the District Court for the District of Columbia held (in a pre-COVID case) that "500 pages per month is an appropriate rate of production." *Id.* at 187.[3] The court noted that the plaintiff had not, as the Plaintiffs have not here, "provided reasons that its requests should take precedence over the duly-made FOIA requests of others." *Id.*

Given the size and complexity of Plaintiffs' numerous requests, a processing rate of 500 pages per month is consistent with the interest of efficiency, taking into account practical realities

---

[3] The court noted that "[i]n a number of recent cases in [the District for the District of Columbia], a production rate of 500 pages per month has been approved. For example, in *Judicial Watch v. Dep't of Justice*, No. 16-cv-2046, the Honorable Tanya S. Chutkan approved such a rate over the plaintiff's objection. . . . The Honorable James E. Boasberg has similarly approved a '500 page-per-month pace.' *Republican Nat'l Comm. v. U.S. Dep't of State*, No. 16-cv-486, 2016 WL 9244625, at *1 (D.D.C. Sept. 16, 2016). The Honorable Colleen Kollar-Kotelly did so twice in *Energy Future Coalition v. Office of Mgmt. & Budget*. *See Energy Future Coalition*, 201 F. Supp. 3d 55, 59-60 (D.D.C. 2016) ('OMB shall continue to review 500 documents per month with respect to Plaintiffs' request . . . )." *Middle East Forum*, 297 F. Supp. 3d at 187 n.3.

of agency staffing and the volume of FOIA requests from all over the country, as well as the holdings of courts regarding FOIA production schedules.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court issue a Case Management order requiring ICE to process at least 500 pages of records per month, and that the parties submit a Joint Status Report on their progress every 60 days.

Dated:  March 24, 2023  Respectfully submitted,

TRINI E. ROSS
United States Attorney

By: /s/ *Scott Leeson Sroka*
SCOTT LEESON SROKA
Assistant United States Attorney
138 Delaware Avenue
Buffalo, New York 14202
Telephone: 716-843-5831
Email: Scott.Sroka@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of March, 2023, that service of the foregoing **Response to Plaintiffs' Memorandum of Law Regarding Production** has been made on counsel of record through the Court's ECF system.

    /s/ *Scott Leeson Sroka*
SCOTT LEESON SROKA
Assistant United States Attorney
138 Delaware Avenue
Buffalo, New York 14202
Telephone: 716-843-5831
Email: Scott.Sroka@usdoj.gov