## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

JUSTICE FOR MIGRANT FAMILIES,  )
PRISONERS' LEGAL SERVICES OF  )
NEW YORK, and ROBERT F. KENNEDY )
HUMAN RIGHTS,  )
  )
     Plaintiffs,  )
  )    Civil Action No. 1:22-CV-929-LJV-HKS
     v.  )
  )
U.S. IMMIGRATION AND CUSTOMS  )
ENFORCEMENT,  )
  )
     Defendant.  )
_____ )

### ICE'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

Defendant, U.S. Immigration and Customs Enforcement ("ICE" or "Defendant"), respectfully submits this response to Plaintiffs' Motion to Compel Defendant's Compliance with the Court's April 25, 2023, Order (ECF No. 23). As set forth below, ICE has diligently sought to comply with the Court's order and its obligations under the Freedom of Information Act (FOIA), and the Court should deny Plaintiffs' motion and allow ICE to continue its efforts to provide Plaintiffs with the relevant documents they seek pursuant to their lengthy and complex request.

### INTRODUCTION

Since the Court's April 25, 2023, Decision and Order (ECF No. 21 at 6), ICE has processed over 6,500 pages of records and has made monthly productions to Plaintiffs. For almost a year, it has been ICE's priority in this case to identify and provide relevant records to the Plaintiffs, which it has diligently and successfully undertaken to do. The production of these records is, of course, the gravamen of Plaintiffs' Complaint, and it is the central remedy provided to plaintiffs under

FOIA. What Plaintiffs are asking the Court to do would turn the FOIA litigation process on its head, requiring ICE to justify and explain search processes that are still in progress and incomplete. Such a requirement would only slow ICE's ability to efficiently complete its searches and productions of records.

In addition to producing responsive records, ICE has provided search terms to Plaintiffs that were used in conducting searches. This effort has been complicated by the extent and intricacies of the Plaintiffs' requests, as well as the number of different sub-components and systems that need to be searched. Even though agencies do not typically provide *Vaughn* indices until the summary judgment stage of FOIA litigation, ICE's production letters all have met the basic requirements of standard *Vaughn* indices by identifying the FOIA exemptions relied upon for withholdings and providing a brief explanation of their application. Additionally, ICE has prepared a *Vaughn* index of approximately 55 random pages for October and November 2023. ICE will continue to produce a *Vaughn* index of randomly selected pages each month following the monthly production.

In an effort to more efficiently provide Plaintiffs the information they seek, ICE has requested that Plaintiffs narrow the terms of their search requests. Instead, Plaintiffs have proposed a revised series of requests that creates more categories and sub-categories of records than already exist in their unwieldy request document. ICE also attempted to expedite its processing and production of records by requesting that in lieu of demanding premature *Vaughn* indices from ICE, that ICE would increase the number of records it processes per month. Without seriously discussing these requests, Plaintiffs undertook to file the instant Motion to Compel.

Plaintiffs essentially want the Court to require ICE to create a separate cataloging system of its productions for them, contra to the principle under FOIA that agencies are not required to

create or organize documents in forms that do not already exist. It is ICE's position that its efforts to provide Plaintiffs with information, on an ongoing basis, regarding the bases for its withholdings and about the search terms it uses comply with the terms of the Court's order.

Therefore, the Court should deny Plaintiffs' motion so that ICE can continue to complete its searches and production, after which it will provide the detailed affidavit(s) and *Vaughn* indices to demonstrate the adequacy and reasonableness of its efforts that are part of the summary judgment process.

## **BACKGROUND**

To date, ICE has made 11 productions of records to Plaintiffs. Each production has included an Interim Release Letter stating the number of pages of potentially responsive records processed since the previous production, the number of pages being released in full or in part, as well as the number of pages provided to third parties for a submitter's notice. The Interim Release Letters also identify the specific FOIA Exemptions applied to each production.

- On March 29, 2023, ICE sent Plaintiffs its First Interim Release Letter, stating that it had processed 502 pages of potentially responsive records and included its first production. Ex. 1.

- On May 1, 2023, ICE sent Plaintiffs its Second Interim Release Letter, stating that it had processed 499 pages of potentially responsive records and included its second production. Ex. 2.

- On May 31, 2023, ICE sent Plaintiffs its Third Interim Release Letter, stating that it had processed 500 pages of potentially responsive records and included its third production. Ex. 3.

- On June 15, 2023, ICE sent Plaintiffs its Fourth Interim Release Letter, stating that it had processed 500 pages of potentially responsive records and included its fourth production. Ex. 4.

- On July 17, 2023, ICE sent Plaintiffs its Fifth Interim Release Letter, stating that it had processed 500 pages of potentially responsive records and included its fifth production. Ex. 5.

- On August 18, 2023, ICE sent Plaintiffs its Sixth Interim Release Letter, stating that it had processed 502 pages of potentially responsive records and included its sixth production. Ex. 6.

- On October 3, 2023, ICE sent Plaintiffs its Seventh Interim Release Letter, stating that it had processed 493 pages of potentially responsive records and included its seventh production. Ex. 7.

- On November 6, 2023, ICE sent Plaintiffs its Eighth Interim Release Letter, stating that it had processed 1,255 pages of potentially responsive records and included its eighth production. Ex. 8.

- On December 13, 2023, ICE sent Plaintiffs its Ninth Interim Release Letter, stating that it had processed 1,095 pages of potentially responsive records and included its ninth production. Ex. 9.

- On January 4, 2024, ICE sent Plaintiffs its Tenth Interim Release Letter, stating that it had processed 188 pages of potentially responsive records and included its tenth production. Ex. 10.

- On February 7, 2024, ICE sent Plaintiffs its Eleventh Interim Release Letter, stating that it had processed 516 pages of potentially responsive records and included its eleventh production. Ex. 11.

ICE will continue to process at least 500 pages per month and produce all relevant documents. ICE also provided a *Vaughn* index of approximately 55 random pages for October and November 2023 (Ex. 12) and will continue to produce a *Vaughn* index of randomly selected pages each month following the monthly production.

Plaintiffs' FOIA request includes 24 separate requests which encompass 132 sub-categories of requested records (ECF No. 1-3 at 19-26). To respond to these voluminous requests, ICE has tasked the following sub-component offices with conducting searches and processing and providing records:

- ICE Office of Acquisition Management (OAQ)

- ICE ERO Custody Management Division (CMD)

- ICE Health Service Corps (IHSC)

4

- ICE ERO Law Enforcement Systems and Analysis (LESA)

- ICE ERO Buffalo Field Office (FOD Buffalo)

- ICE Office of Professional Responsibility (OPR)

- ICE Batavia Detention Facility

All of these offices must coordinate with the ICE Office of the Principal Legal Advisor (OPLA) and the ICE FOIA Office to cull the total results for those that are responsive and appropriate for production.

ICE has provided monthly productions of records to Plaintiff, as well as indicia of the exemptions relied upon for withholdings. ICE has provided search terms used and the sub-component offices tasked with conducting searches. Additionally, ICE has undertaken to provide more formal *Vaughn* indices to accompany its productions. Given the length and complexity of Plaintiffs' requests and their unwillingness to meaningfully narrow them, placing any additional burdens on Defendant before summary judgment would only hinder the production of records in this case and expend valuable resources needed to respond to the requests of other applicants.

## **ARGUMENT**

"The standard remedy for a FOIA violation is an injunction from a district court ordering 'the production of any agency records improperly withheld from the complainant.'" *Middle East Forum v. U.S. Dep't of Treasury*, 317 F. Supp.3d 257, 262 (D.D.C. 2018) (citing 5 U.S.C. § 552(a)(4)(B)).

"Courts almost exclusively resolve FOIA actions through the submission of cross-motions for summary judgment." *Haitian Bridge All. v. DHS*, No. 22-cv-8344 (ER), 2024 U.S. Dist. LEXIS 21645, at *14 (S.D.N.Y. Feb. 7, 2024) (citing *NRDC v. U.S. Dep't of Interior*, 73 F. Supp.3d 350, 355 (S.D.N.Y. 2014); *see also Mermerlstein v. DOJ*, 19-CV-00312 (GRB)(JMW), 2021 WL

3455314, at *4 (E.D.N.Y. Aug. 4, 2021) ("Courts routinely resolve challenges to FOIA withholdings at the summary judgment stage.") (citing *Platsky v. Food & Drug Admin., Div. of Freedom of Info.*, No. 13-CV-06250 (SLT)(RLM), 2014 WL 7391611, at *3 (E.D.N.Y. Dec. 24, 2014) ("FOIA cases are generally and most appropriately resolved on motions for summary judgment."); *Am. C.L. Union v. Dep't of Def.*, 435 F. Supp.3d 539, 553 (S.D.N.Y. 2020) ("Summary judgment is the usual means by which a court resolves a challenge to a government agency's FOIA response.")). "To achieve summary judgment in a FOIA action, a defendant agency must show that: (1) it conducted an adequate search for responsive records; and (2) any withheld documents fall under a FOIA exemption or exclusion." *Mermerlstein*, 2021 WL 3455314, at *4 (citing *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994)).

"Affidavits or declarations are ordinarily the principal source of proof in FOIA cases on summary judgment motions." *Mermerlstein*, 2021 WL 3455314, at *4 (citing *Florez v. CIA*, 829 F.3d 178, 182 (2d Cir. 2016) (additional citation omitted)). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d. Cir. 2009).

It is therefore appropriate for agencies to demonstrate the adequacy of their searches and the validity of withholdings through agency affidavits and a *Vaughn* index by a motion for summary judgment *after* the completion of the production of relevant records.

# I.

## FOIA DOES NOT REQUIRE ICE TO ORGANIZE DOCUMENTS TO FACILITATE FOIA RESPONSES

FOIA does not require a responding agency to identify which documents are responsive to particular categories and subcategories of a request. *See Hall & Assoc. v. E.P.A.*, 846 F. Supp.2d 231, 241-43 (D.D.C. 2012) (citing *Yeager v. D.E.A.*, 678 F.2d 315, 321 (D.C. Cir. 1982) ("It is well settled that an agency is not required by FOIA to create a document that does not exist in order to satisfy a request.")). FOIA also "does not require agencies to 'organize documents to facilitate FOIA responses.'" *Prison Legal News v. Lappin*, 780 F. Supp.2d 29, 45 (D.D.C. 2011) (quoting *Goulding v. I.R.S.*, No. 97 C 5628, 1998 WL 325202, at *5 (N.D. Ill. June 8, 1998)). Furthermore, the appropriate time for an agency to demonstrate the adequacy of its searches and search terms is at the summary judgment stage. *Haitian Bridge All.*, 2024 U.S. Dist. LEXIS 21645, at *26-27 (citing *Immigrant Def. Project v. ICE*, 208 F. Supp.3d 520, 526 (S.D.N.Y. 2016) ("A withholding agency . . . can demonstrate the adequacy of its search at the summary judgment stage through the submission of detailed declarations describing the search procedures used."); *American Chemistry Council, Inc. v. HHS*, 953 F. Supp.2d 120, 121 (D.D.C. 2013) (noting prior order holding that it was "premature to rule on the adequacy of Defendants' search before they had submitted supporting declarations detailing their efforts.")).

In *Haitian Bridge All.*, involving some of the same litigants for the Plaintiffs in this case, the U.S. District Court for the Southern District of New York recently held that because

> [t]he parties have not briefed whether the DHS Defendants' search ignored clearly relevant search terms, nor have the DHS Defendants provided declarations regarding the sufficiency of their search, Plaintiffs' argument on the sufficiency of the DHS Defendants' search is premature, and should be brought, if at all, after the DHS Defendants complete their search and production of documents. Indeed, Plaintiffs do not cite a single case where a court required an agency to use a FOIA requester's proposed search terms before the agency had completed these actions.

> All of the cases cited by Plaintiffs to support their proposition were litigated on summary judgment *after* the defendant agencies had completed their searches and produced responsive records.

2024 U.S. Dist. LEXIS 21645, at \*27 (citing *Immigrant Def. Project*, 208 F. Supp.3d at 526, 528 (emphasis in original)).

Plaintiffs ask the Court to order ICE to provide search terms by category and subcategory of Plaintiffs' request, and to order ICE to identify the number of pages produced for each category and subcategory. Plaintiffs, in essence, have deconstructed the components of a motion for summary judgment and now want ICE to *de facto* provide components of an agency declaration that normally accompany a motion for summary judgment after the production of records is complete. Plaintiffs are also asking the Court to order ICE to organize its productions in new ways that do not already exist. This is both a misapplication of the principles of FOIA and a drain on scarce government resources.

In *Prison Legal News*, the plaintiff asked the Court to order the agency to provide it with a spreadsheet of the information it produced. The agency argued that it had no responsibility under FOIA to organize the responsive records in any particular manner or provide explanatory material to accompany the responsive records, and it noted, as here, that the plaintiff cited no legal authority supporting its request to provide responsive documents in a particular format. 780 F. Supp.2d at 45. The court agreed that "FOIA does not require agencies to 'organize documents to facilitate FOIA responses,'" and declined to direct the agency to provide plaintiff with the requested spreadsheet or to organize documents in any specific manner. *Id.*

This is precisely what Plaintiffs seek here. They want the various ICE sub-component offices, OPLA, and the ICE FOIA Office to sift through the records that are the result of numerous searches and categorize and organize them in ways preferable to the Plaintiffs. Then, they want

each sub-component to explain which search terms were applied to which request categories, which is what is required of agency personnel when they prepare their final declarations for summary judgment. *See Tushnet v. ICE*, 246 F. Supp.3d 422, 431 (D.D.C. 2017) (supporting affidavits can include the search terms used, the type of search performed, and assert that all records likely to contain responsive materials were searched); *Rodriguez v. Dep't of Def.*, 236 F. Supp.3d 26, 40 (D.D.C. 2017) (In order for the agency to demonstrate a search methodology is adequate, the agency "must explain with reasonable detail '*how* [a] search was conducted' and set forth [both] the search terms and the type of search performed.").

ICE's obligation at summary judgment is to show that it conducted adequate searches for records, and that its withholdings are justified by the FOIA exemptions. This can be accomplished primarily through declarations outlining the methods used to search for responsive records. ICE anticipates providing one or more declarations as part of its motion for summary judgment upon completion of its processing and production of records. To require ICE to meet these requirements now would be to effectively order a premature motion for summary judgment. *See Albaladejo v. ICE*, 518 F. Supp.3d 496, 505 (D.D.C. 2021) (denying ICE's motion for summary judgment as "premature" where agency continued to assess its search for responsive documents).

## II.

### A *VAUGHN* INDEX IS MOST APPROPRIATELY PROVIDED DURING THE SUMMARY JUDGMENT STAGE OF FOIA LITIGATION

Providing a full *Vaughn* index at this point will only divert time and resources away from ICE's ongoing effort to process and produce responsive records. *See Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993) ("The plaintiff's early attempt in litigation of this kind to obtain a *Vaughn* index . . . is inappropriate until the government has first had a chance to provide the court with the information necessary to make a decision on the applicable exemptions."); *Mullen v. U.S. Army*

*Crim. Investigation Command*, No. 10-262, 2011 WL 5870550, at *4 (E.D. Va. Nov. 22, 2011) (discussing generally timing of *Vaughn* index production and ruling agency did not have to produce *Vaughn* until it filed its dispositive motion); *Ioane v. C.I.R.*, No. 09-00243, 2010 WL 2600689, at *6 (D. Nev. Mar. 11, 2010) ("Generally, agencies should be given the opportunity to file dispositive motions and produce affidavits regarding claimed exemptions before they are ordered to produce *Vaughn* indices."); *Stimac v. DOJ*, 620 F. Supp. 212, 213 (D.D.C. 1985) (denying as premature motion to compel *Vaughn* index on ground that "filing of a dispositive motion, along with detailed affidavits, may obviate the need for indexing the withheld documents.").

If ICE were to produce a full *Vaughn* index at this early stage, due to the voluminous requests made by the Plaintiffs, it would be necessary to use representative samplings of the withheld documents. *See, e.g., Neely v. FBI*, 208 F.3d 461, 467 (4th Cir. 2000) (referring to "the well-established practice . . . of randomly sampling the documents in question"); *Jones v. FBI*, 41 F.3d 238, 242 (6th Cir. 1994) (approving sample comprising two percent of total number of documents at issue); *Meeropol v. Meese*, 790 F.2d 942, 956-57 (D.C. Cir. 1986) (allowing sampling of every 100th document when approximately 20,000 documents were at issue); *Schoenman v. FBI*, 604 F. Supp.2d 174, 196 (D.D.C. 2009) ("As is particularly relevant here, '[r]epresentative sampling is an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved.'").

Plaintiff's request that ICE justify its withholdings now essentially seeks to impose an obligation on ICE to respond to piecemeal challenges to its production that courts strongly discourage. *See, e.g., Louise Trauma Ctr. LLC v. Dep't of Homeland Sec.*, Civ. A. No. 20-1128

(TNM), 2022 WL 1081097, at *2 (D.D.C. Apr. 11, 2022) (noting that the court ordered a new round of briefing to avoid piecemeal challenges to production).

Moreover, Plaintiffs have presented no reason why this case should deviate from the usual manner in which FOIA cases are routinely litigated, which entails plaintiffs raising challenges to the propriety of certain withholdings after processing has completed, and at a time when meaningful communication can occur among counsel. ICE has committed substantial resources to responding to Plaintiffs' FOIA requests. Adding further obligations, however, to justify ICE's withholdings after each interim production would require ICE to allocate more resources to this request at the risk of shifting resources from other requests. *See Am. Ctr. For L. & Just. v. United States Dep't of State*, 289 F. Supp.3d 81, 89 (D.D.C. 2018) (finding that while the government "has been able to satisfy its litigation obligations, these accomplishments were done at the expense of all other requesters seeking information from the government.") (quotations and citation omitted). Indeed, neither the age of this case, nor any other factor, supports shifting resources to meet a requirement that deviates from the usual manner in which FOIA cases are routinely litigated.

Finally, even when an agency submits a full *Vaughn* index as part of a motion for summary judgment, it is the function, not the form that is important. *See Hornbeck v. U.S. Coast Guard*, No. 04-1724, 2006 WL 696053, at *6 (D.D.C. Mar. 20, 2006) ("[T]he precise form of the agency's submission – whether it be an index, a detailed declaration, or a narrative – is immaterial."). What "is required is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." *Manna v. DOJ*, 832 F. Supp. 866, 873 (D.N.J. 1993) (quoting *Hinton v. DOJ*, 844 F.2d 126, 129 (3d Cir. 1988), *aff'd*, 51 F.3d 1158 (3d Cir. 1995); *see also Pinson v. DOJ*, 61 F.

Supp.3d 164, 185 (D.D.C. 2015) (finding agency's *Vaughn* index adequate when it "notes the number of pages in the document and the FOIA request to which it applies, identifies the exemptions asserted and provides a 'description of the withheld information'").

Here, the Court should find that ICE's Interim Production Letters meet the requirements of its order, as they provide Plaintiffs with the pages produced, the FOIA exemptions claimed as the basis for withholdings, and an explanation for their application. For example, in ICE's Tenth Interim Production Letter, dated January 4, 2024, and attached hereto as Exhibit 10, ICE has relied on Exemptions 6 and 7(C) for certain withholdings and explains:

> ICE has applied FOIA Exemptions 6 and 7(C) to protect from disclosure the names, e-mail addresses, and phone numbers of ICE and DHS employees contained within the documents, as well as the names, and other personally identifiable information of other individuals contained within the records.

*See* Ex. 10.

The Court should find that these explanations, along with the additional sampled *Vaughn* indices being produced, satisfy the Court's order. This is said with the understanding that complete ICE declarations and a final *Vaughn* index will be provided with a motion for summary judgment. If the Court finds that this does not meet the requirements of its order, ICE requests that the Court modify the order to allow for these "rolling" *Vaughn* indices to satisfy the order, while expecting the final versions at summary judgment.

**CONCLUSION**

For the reasons set forth above, Defendant respectfully requests that the Court deny Plaintiffs' Motion to Compel in its entirety.


Dated:  February 9, 2024                Respectfully submitted,

                                        TRINI E. ROSS
                                        United States Attorney

                                        By: /s/  *Scott Leeson Sroka*
                                          SCOTT LEESON SROKA
                                          Assistant United States Attorney
                                          138 Delaware Avenue
                                          Buffalo, New York 14202
                                          Telephone: 716-843-5831
                                          Email: Scott.Sroka@usdoj.gov

## CERTIFICATE OF SERVICE

I  HEREBY CERTIFY that on this 9th day of February, 2024, that service of the

foregoing **Response to Plaintiffs' Motion to Compel** has been made on counsel of record

through the Court's ECF system.


 /s/ *Scott Leeson Sroka*
SCOTT LEESON SROKA
Assistant United States Attorney
138 Delaware Avenue
Buffalo, New York 14202
Telephone: 716-843-5831
Email: Scott.Sroka@usdoj.gov